Thank you, Your Honors. Good morning. My name is Matthew Bean. I represent the appellant, Anthony Shelton. I'd like to reserve four minutes, if I might, for rebuttal. Sure. Give the item the clock, please. Thank you. Your Honor, this case is about the employer's obligation to provide guidance to employees who take FMLA leave, and whether an employer may discipline an employee who complies with the employer's written FMLA policy, in connection with that leave. So the questions before the Court are, first, what is Boeing's policy for requesting FMLA slash WFLA leave? Second, if Shelton followed this policy, is his leave protected? And third, if not, did Boeing's approval of his FMLA leave constitute a waiver of its right to discipline him for his actions in taking that leave? So I want to talk first about what goes on when an employee at Boeing requests FMLA leave. Boeing hires a third party, Aetna, to administer its FMLA leave. Because, as Boeing writes in its own brief, it wishes to create separation, oversight, and privacy, because Boeing has an obligation to its employees to ensure that their medical issues are kept confidential. That is required under both the FMLA and the Americans with Disabilities Act. So Boeing has a strong business interest to create separation from its employees and its line managers about issues related to the FMLA leave. Where do we look to see the cause of termination? I know what your argument is. I've read the brief and I'm familiar with what your argument is. Where do we look to see that that's the proof, any proof that had to do with it? In terms of Boeing's intent? Yes. Okay. So that's a great question. And that constitutes, the question really is... I'm glad you said so, but can you answer it? I'm getting some feedback here. The CFRs. In other words, the employee is entitled to written notice from Boeing as to what it's supposed to do to request leave. Once Shelton conforms with Boeing's written policy, he's done everything he needs to do to get protected. That's why Edna approved his leave. Are you talking about the leave of absence handbook? I'm talking about Section 7 of the leave of absence handbook. That's Boeing's express FMLA policy. I'm looking at ER 90, which pretty unambiguously says employees needing to take any absence should always speak to their manager and must provide 30-day advance notice if the leave is foreseeable. I think this is what the manager had directed him to when he failed to notify the manager. Actually, the manager said it was her own rule. She didn't say that he had violated Section 6. Section 6 isn't Section 7. So as a factual matter, this is a summary judgment, after all. As a factual matter, when we deposed Steve Miller, who's the head of Boeing discipline, basically, he turned to Section 7 to say this is what an employee is supposed to do. So to the extent there's any distinction between Section 6 and Section 7, either it's a, either we should get the evidence and the light most favorable to us as the nonmoving party, or the Court should simply hold that an employer is obligated to say what it wants an employee to do who's taking FMLA leave in its FMLA section. Is timing significant in this case? Is timing? Yeah, because it is, because that actually sort of shows the difference between FMLA and just regular absences. The FMLA policy that Boeing has is carefully crafted. It conforms with Section 303. I thought you were going to say timing is not important. No, timing is important. How much time was there between the action that he complained, the event that he complains of, I mean that he refers to, and the action that he complains of? How much time passed? Well, it's progressive discipline. So Boeing disciplined him for his... Move on. Okay. Well, because the Court has to decide what is Boeing's FMLA policy. It's two days under the FMLA policy, and the manager wants prior to the shift. So if Boeing really wants employees notifying managers before the shift of their FMLA leave, why doesn't it just say so in its FMLA policy? Why isn't the FMLA policy subsumed under the general notice requirement? Which is to say, look, if it's possible to notify your manager in advance of leave, do that, because there's a common sense reason that you would tell your immediate supervisor, to the extent you're able to do so, that you're going to be absent. Right. That's going to create so many administrative problems for the employer in this case. I think that you have to take a step back and say, look, Boeing really carefully crafted its policy, because it doesn't want to have problems deciding when is it going to excuse a notification that comes after the start of the shift. If you look at the regulations, it says as soon as practical, or within the amount of time prescribed by the employer's policy, it is, if Boeing actually had the rule that the employee had to notify the manager before the start of the shift, then who's adjudicating when is the exigent circumstance, because a lot of people aren't going to be able to call before the start of the shift. The whole point of the FMLA is to protect people who are needing to take emergency leave. And if you're supposed to contact the employer before the start of the shift, and then contact the FMLA leave desk two days later, or within two days, that creates a whole lot of problems. And now we're going to have people at Aetna administering, you know, making off-the-cuff calls. That's just going to require a lot of litigation and problems. Boeing's policy solves that by creating presumption of timeliness if it's within two days. And then if it's beyond two days, that's when they have to decide if they're exigent circumstances. So if somebody's in a coma or laid up in the hospital, then maybe they should have a week. But they shouldn't be required to contact them, you know, before the shift starts. So the two days is the rule that Boeing has. And all that Boeing has to do, if it has a different rule, is simply amend Section 7.3. If it does that, then it's in clear conformance with the CFRs, and it gives clear guidelines to its employees. I mean, people who are in medical crisis should not be looking to different sections of a 60-page leave policy. They should be able to turn to Section 7 and see what it says, just like Mr. Miller did in his deposition. So we have factual questions here. If the court is believing that there are other obligations that employees have that are separate and apart from Section 7.3. I also want to talk about waiver, because there are no cases where an employee has been granted leave and still disciplined. So Boeing says that there's no connection between the discipline and the FMLA, but of course there is. He is being progressively disciplined twice for absences that the Aetna BOM group deemed to be, you know, protected. How can you have leave that is granted but is not protected? So they grant him the leave, yes, but they don't protect him. The whole purpose of the act is to protect that leave. What... Any evidence in the record that he couldn't notify the manager in advance of needing the leave? Well, that's a great question. Again, we're getting into the facts of the case, which would require a trial. But in this case, you know, after he gets his written warning and he's told to provide his manager with notice before the start of the shift, he does that. And we have the smoking gun email where the manager believes that he has complied with the warning. She says, look, it worked, timely notice. So how we get from timely notice that the manager believes to a suspension is unexplained. Boeing, there is no evidence in the record why the manager thought that Mr. Sheldon was not in compliance with her prior warning. In fact, she did. That's what she says. That's her, you know, this is all a construct that's going on when human resources is now kind of stepping in and administering the FMLA policy when Boeing really wants Aetna to administer the FMLA policy. So if I might, if I'd like to take the rest of my time and rebuttal. Thank you. May it please the court. Alison Ho for Boeing. The record evidence in this case indisputably establishes that Mr. Sheldon was disciplined because nine times over a period of one and a half months, he refused to comply with his manager's repeated requests and Boeing's policy to call his manager's office. And no reasonable jury could find that the rule was not part of Boeing's usual and customary policies, because it was clearly set out in the written attendance policy that governed Mr. Sheldon's schedule. It was reiterated multiple times in Boeing's leave of absence handbook, as your honor pointed out, that's at SCR 21, 24, 32, 60 and 63. And it was reinforced by repeated reminders to Mr. Sheldon personally by his manager, by his HR representative and by his union steward. That's set out in our brief at pages nine through 12. It was even acknowledged by Mr. Sheldon, who simply refused to comply with it. But it's not in section seven. No, your honor. It isn't. It isn't in section seven. It is, as your honor pointed out, in section seven. It is also contained in the appendix, where it says you're required to notify your manager and contact total access. But even if, your honor, there was some room to argue on that, I think in the face of the email from his manager, the written attendance policy, the personal reminders, I think all of that, there's simply not a scintilla of evidence in this case that calling the manager before the start of your shift wasn't part of Boeing's usual and customary policies in this case. FMLA regulations specifically allow employers to discipline employees who don't comply with usual and customary policies that are neutral and generally applied. And that's just what Boeing did here, as the district court correctly concluded. And even after his union steward warned Mr. Sheldon that he was in danger of losing his job, Mr. Sheldon responded that he would not, in the union steward's words, quote, call his boss, that's at SCR 199, and later testified that this was because he didn't feel, quote, like he was violating Boeing's policy. Even though the undisputed evidence showed that he had been repeatedly told by Boeing management, HR, and his union to call his manager when he was going to be absent for any reason. And to respond directly to your honor's question, Judge, there is no evidence in this record that Mr. Sheldon could not have called in. All of the evidence is that he simply refused to comply with the rules. So there's no evidence on this record of any circumstance that would have prevented Mr. Sheldon from calling in on those warnings. Let me refresh my memory. It was submitted on summary judgment. Mr. Sheldon testified either by deposition or by affidavit? Deposition, your honor. And was that, was he asked in the deposition whether there were any exigent circumstances? I'm not suggesting he had to, but I'm just asking, was he asked? I don't want to, I believe that he was asked, your honor, but we'll check and confirm that, because I don't want to inadvertently mislead. Well, if he was asked and you're telling me the record indicates that he said no, there were no exigent circumstances, or I just didn't feel like. He is never, he's never claimed, he's never pointed to any reason that he could not. And in fact, when his, before the absences, his response to his manager's e-mail, his manager's e-mail of May 15, reiterating the policy, the call-in policy, his response at SER 162 through 63 was that he would do that if his manager's e-mail had not been sent. That his manager would give him a phone and relocate him to a building in which he preferred to work. So I think that, and there's many other instances in the record and in our brief that make clear that Mr. Sheldon's issue wasn't that he couldn't comply, but that he wouldn't comply. And I think particularly on this record, no circuit would find FMLA liability on the facts here. And several have specifically rejected similar claims. Most prominently, the Tenth Circuit in Bones, the Sixth Circuit in Srouter, the Seventh Circuit in Gilliam, and the Eighth Circuit in Bacon. The only case that Mr. Sheldon can point to for support is the Sixth Circuit's decision in Cavan v. Honda. But as the Sixth Circuit later clarified in Srouter, that case is no longer good law because it rests on regulations that are now obsolete. And that were changed to permit, in fact, exactly what Boeing did here. A few words on waiver. The regulations at 825.304 subsection E allow employers to waive notice requirement. They don't say that granting leave immunizes employees from discipline for failure to follow call-in rules. And they certainly don't put employers to the perverse choice of either strictly enforcing notice before granting leave or dispensing with notice altogether. The regulations permit the sensible middle ground of granting leave and dealing with notice through discipline. And that's precisely what Boeing did here. And on the unusual circumstances argument. Setting aside that Mr. Sheldon waived this argument, it's meritless for two reasons. First, there is no evidence from which a reasonable jury could conclude that there was any actual ambiguity or confusion here, unlike the cases on which Mr. Sheldon relies. When Mr. Sheldon's managers reminded him of the leave policy, is there any indication in the record whether or not Mr. Sheldon was able to do that? Either through her declaration or email or other formal correspondence, pinpointing Mr. Sheldon to the specific provisions of the leave of absent policy that Boeing thought he was in violation of? He was repeatedly reminded of, through his call from his manager, through Tanya Irby, of his manager, of the policy. I know that she explained what she thought was the policy, which is that you have to notify the manager if you're able to do that. In advance of the leave, but was there any more formal correspondence following up that pinpointed him to the provisions that Boeing thought he was in violation of? He did receive, in addition to the calls and the other counseling, he did receive the corrective action memo, which pointed to, specifically to his manager's instructions to do that. I would have to double check in terms of were specific provisions referenced. But we know from other case law, a written policy isn't required. He was certainly reminded again and again of his manager's policy and Boeing's policy of calling in before his shift. And when he sat down with Ms. Irby and she explained what he needed to do, and his response was, he was not going to do that. So again, I'm not certain whether the HR or his manager pointed him to specific provisions in the handbook. But he was certainly reminded again and again of his manager's instructions. I don't think there was any confusion here about what he was required to do. I think this was simply a case of noncompliance and insubordination, that he refused time and again to speak to his manager. Despite warnings, that that was the rule for him to do it. And then again, just to reiterate, there's no evidence here otherwise that would constitute unusual circumstances, such as a medical emergency. This is simply a case of wouldn't, not couldn't. So in sum, Mr. Shelton knew what was expected of him, and he simply refused to do it. His personal disagreement with Boeing's rules doesn't create a material fact issue, much less provide a basis for liability. And if there are no other questions, we respectfully request that the district court's judgment be affirmed. Thank you. Thank you. Thank you. We still haven't heard from Boeing what is its FMLA policy. Is it that he is supposed to call in to his manager before his shift, which is not in its FMLA policy? Or is Boeing trying to discipline Mr. Shelton for some ancillary policy that isn't part of its FMLA policy? I still haven't gotten an answer to that question, and that's a question that really the court needs to wrestle with, because it implicates summary judgment and what is the, you know, what is the evidence in light most favorable to Boeing or to Mr. Shelton, as we do have cross motions for summary judgment. I can certainly understand why you wouldn't want to narrowly focus on Section 7, but to the extent that there's any ambiguity or questions, I think the manager sat down with him and explained what the obligations are. So to follow up on Judge Murphy's point, when I look at the district court's order on page 6, the order says that in Mr. Shelton's declaration, he received calls from his union regarding absences and refusal to notify the manager, and according to the district court, he did not notify his manager prior to his absence, because he didn't feel that he was in violation of any Boeing policy. Is that an accurate summary of his response, or are there other portions of the deposition that we need to look to? Oh, I think that's accurate. I just don't think it talks about everything that's going on, because what the district court doesn't do is really wrestle with the fact that Shelton's manager didn't think that Shelton was in noncompliance with his second request of deposition. That's a critical fact. Why did the manager not think that he was in noncompliance? That's an issue of fact. So if the court is struggling with, did Shelton comply? We're not struggling with anything. Fair enough, Your Honor. I'm struggling with trying to figure out what Boeing's policy is, because we believe that Boeing has an obligation under the regulations to have a clear policy as to what is required to obtain protected FMLA leave. And the only way that the court should, the only place the court should look would be in the employer's FMLA section. If Boeing wants Mr. Shelton to contact its manager before his shift, if he's going to take FMLA leave, it should put that in the policy. That's all that has to be done to clarify the situation. And there's a reason why Boeing didn't do that. So what Boeing, I think, is trying to say is that Shelton should be punished for an ancillary policy. But if we're talking about an ancillary policy, then we really have to go back and see what are the authors of the CFRs really trying to do. Are they trying to create ambiguity for employees? Are they trying to create clear guidelines as to what it is to request and get approved leave? Because... The ambiguity here is, is the call-in procedure, is the requirement to call the manager part of an FMLA policy, or part of the manager's private policy, or part of Section 6 or 5, whatever the case may be? Where should an employee turn to in a moment of medical crisis to get guidelines on what they need to do to make sure that they have a job to return to when they come back from FMLA leave? And if a person complies with what Boeing says in its FMLA policy, and the person, and the party that's administering that believes that he's provided proper notice, then why is that leave not protected? They can say they can give him leave, but what did it mean to give him leave? They didn't protect his leave at all. They gave him a written warning, and then they suspended him, all for attendance that was covered under the FMLA, in which Boeing concedes is covered under the FMLA, because it granted his leave. So what is Boeing saying? Are they saying that his absences weren't covered by FMLA? Did he not give proper notice? I think they're saying that it's covered, but under shared accountability provision of the leave of absence policy, for any absence you're supposed to call the manager when you're able to do so. That's why we were pinpointing, well, was there a reason he was unable to do so that we can discern from the record? Right. But under 304, the employer can either waive and grant leave, or they can not waive and discipline. By granting the leave, they have to at least protect him for that leave, and that's what Boeing failed to do. They gave him the leave, they didn't protect him, that's the problem with this termination. Thank you.
judges: Murphy, Farris, Nguyen